IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHARON R. PAIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL[1], | : | |
| Commissioner of Social Security | : | NO. 18-10697 |

O P I N I O N

JACOB P. HART                                                 DATE: 3/3/20
UNITED STATES MAGISTRATE JUDGE

       Sharon R. Pain brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her application for Disabled Widow's Insurance Benefits. She has filed a Request for Review to which the Commissioner has responded. As discussed below, Pain's Request for Review will be denied, and judgment granted in favor of the Commissioner.

I.     Factual and Procedural Background

       Pain was born on September 5, 1959. Record at 319. She completed two years of college. Record at 336. She worked for many years as an administrative assistant. Record at 337. Between July 22, 2015 and September 8, 2015, Pain filed applications for disability insurance income, supplemental security income, and widow's insurance benefits. Record at 308, 312, 319. She alleged disability since July 22, 2011, as a result of a spine condition, obesity, high blood pressure, high cholesterol, diabetes, and depression. Record at 319, 335.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

Pain's applications were denied initially and upon reconsideration. Record at 98, 99, 100, 101, 126. Pain then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 165.

A hearing took place in this case before an ALJ on November 9, 2017. Record at 34. On January 10, 2018, however, the ALJ issued a written decision denying benefits. Record at 15. The Appeals Council denied Pain's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Pain then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

      requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.    <u>The ALJ's Decision and Pain's Request for Review</u>

      In her decision, the ALJ determined that Pain suffered from the severe impairments of degenerative disc disease, cervical radiculopathy, arthropathy of the right shoulder, diabetes, high cholesterol, hypertension, obesity, depression, anxiety, and a borderline personality disorder. Record at 18. She found that Pain also suffered from eczema, but that it was not severe. <u>Id</u>. The ALJ then decided that no impairment or combination of impairments met or medically equaled a listed impairment. <u>Id</u>.

      The ALJ found that Pain retained the residual functional capacity ("RFC") to engage in sedentary work which only required lifting a maximum of ten pounds occasionally, and a negligible weight frequently; sitting up to six hours, and standing and walking for a total of two hours in an eight-hour workday. Record at 20. Pain also required a cane for walking. <u>Id</u>. Also, because of her "pain, weakness, and psychiatric symptoms, which affect her ability to focus and concentrate," Pain would be off-task 5% of an eight-hour workday, and absent once per month. <u>Id</u>.

Relying on the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Pain could return to her prior work as an administrative assistant, as it is generally performed. Record at 26-7. She concluded, therefore, that Pain was not disabled. Record at 27.

In her Request for Review, Pain argues that the ALJ's evaluation of the opinions of her treating physicians violated Agency policy and regulations. She also argues that the ALJ failed to account for her mental limitations in the RFC assessment.

I.  Discussion

A.  The Treating Physician Opinion Evidence

On the date Pain's applications for benefits were filed, Social Security regulations directed an ALJ to give enhanced weight, even controlling weight, to the opinion of a treating physician where it was consistent with the other evidence of record. See, e.g., Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), citing 20 CFR §404.1527 (as it applies to cases filed before March 27, 2017). Pain argues that the ALJ failed to apply this standard in evaluating the report of her treating primary care physician, Eddie Gamao, MD.

The file contains a Medical Source Statement completed by Dr. Gamao on September 10, 2015. Record at 412. In it, he indicated that Pain could stand and/or walk for no more than two hours, and could sit for no more than two hours, in an eight-hour workday. Record at 413. She could never lift or carry any amount of weight. Id. Nor could she ever twist, stoop, crouch, climb ladders or climb stairs. Id. She also had a "significant limitation with reaching, handling or fingering." Id. Her pain would constantly interfere with the attention and concentration needed to perform "even simple work tasks." Record at 414.

According to Dr. Gamao, Pain was incapable of performing even a low stress job. Id. Further, she would be absent more than four days per month as a result of her impairments or treatment. Id.

The ALJ gave Dr. Gamao's statement little weight, calling it "entirely inconsistent" with his own treatment notes, and with the rest of the record as a whole. Record at 25. She explained:

> Specifically, his records indicate that the claimant very rarely complained of having any pain symptoms. Dr. Gamao did not find any major abnormalities in the claimant's physical examination, and he never noted that the clamant walked with an antalgic gait or appeared to be in distress. Records from November of 2016 and May of 2017 note that the claimant reported that her neck was "feeling good lately" and she was no longer experiencing any pain and stiffness in her neck. She continued to have some symptoms of right arm pain, but compression test, distraction test, and alar ligament tests were all negative. The claimant herself reported that she could drive a car, prepare simple meals, and do some light household chores. This evidence is inconsistent with Dr. Gamao's opinion that the claimant is severely restricted.

Record at 25. (Internal quotations omitted).

Pain argues that the ALJ was not permitted to find that Dr. Gamao's opinion was inconsistent with his own notes, calling it "simply an impermissible substitution of the ALJ's lay opinion for that of the expert." Pain's Brief at 19. There is no merit to this argument. The Court of Appeals for the Third Circuit has repeatedly permitted an ALJ to decline to credit a treating physician's opinion because it is inconsistent with the doctor's own notes, among other evidence. See Hoyman v. Colvin, 606 Fed. Appx. 678, 680 (3d Cir. 2015); Dunson v. Commissioner of Social Security, 615 Fed. Appx. 65, 69 (3d Cir. 2015); Becker v. Commissioner of Social Security, 403 Fed. Appx. 679, 686 (3d Cir. 2010).

The ALJ's analysis of the evidence upon which she relied was reasonably accurate. A number of Dr. Gamao's treatment notes reflected complaints of pain. Record at 417, 430, 584, 590, 596, 600. More frequently, however, Pain's "musculoskeletal, back, extremities, joints"

5

were checked off as "normal." Record at 416, 420, 421, 422, 423, 429, 431, 432, 433, 434, 435, 437, 438, 589, 594, 597, 601.

The May 11, 2017, record to which the ALJ referred was a physical therapy note which included this observation: "Pt states that her neck has been feeling good lately and that she is not experiencing pain and stiffness in her neck" although she had symptoms radiating down her right arm. Record at 524. (The significance of the negative diagnostic test results is unclear, however, since Pain's positive Spurlings Test would indicate the presence of cervical nerve compression which could be the source of radiculopathy; Http://physio-pedia.com/Spurling%27s_Test).

Also, although Pain indicated in the Function Report she completed as part of her application that she was limited in her activities of daily living, she also conveyed that she could drive a car, leave the house alone, make simple meals, and do some housework such as folding and sorting clothes, putting away groceries, and "light cleaning of kitchen, bathroom." Record at 351-2.

Further, on July 27, 2017, Pain's cardiologist, Aron Barsky, MD, found that her muscles were normal in symmetry, tone, strength, and range of motion. Record at 587. Similarly, when Pain saw orthopedist David Brown, DO, on September 18, 2017, complaining of pain in her back and legs, with increasing weakness, and legs giving out, he found upon examination that she had full strength in all extremities, with no atrophy. Record at 580. She had normal reflexes in both arms and legs, with no clonus, cyanosis (bluish discoloration caused by poor circulation) or edema. Id. Nerve conduction studies were normal, as was an EMG of Pain's lower spine. Id. Dr Brown concluded that there was no evidence of a lower extremity neuropathy, myopathy, or radiculopathy on either side. Id. and see Record at 650 (normal EMG report), 651 (x-ray of

6

lumbar spine showing "very mild degenerative changes"), 652 (normal x-ray of the hips and pelvis).  The ALJ discussed Dr. Brown's findings.  Record at 23.

The ALJ also relied upon the findings of the reviewing agency physicians, Andrew Przbyla, MD, and David Schneider, MD, although she ultimately issued a much more limited RFC assessment.  Record at 26.  Drs. Przbyla and Schneider agreed that Pain was able to lift and/or carry 20 pounds occasionally and ten pounds frequently, and could sit, stand, and/or walk for six hours in an eight-hour workday.  Record at 72-74, 122-123.

All of this evidence contradicted Dr. Gamao's report, which described limitations so severe that they would render Pain essentially immobile.  Notably, the objective evidence suggests that Pain has no lower back or leg impairment which would support his finding that she could barely sit, stand, or walk.  Even under the older regulations, therefore, the ALJ was not obligated to accept Dr. Gamao's unsupported opinions.

B.      Pain's Mental Limitations

Pain did not have a substantial history of mental health treatment.  Dr. Gamao, her general practitioner, prescribed Sertraline (Zoloft) for depression.  Record at 338.  However, it seems that Pain never saw a mental health practitioner other than independent consulting medical expert J. Theodore Brown, Jr., Ph.D., who met with her on October 5, 2015.  Record at 472.  Pain told Dr. Brown that she had no history of psychiatric treatment or hospitalization.  Id.

Dr. Brown wrote that Pain's energy level was good and her mood upbeat, without "agitation, physical or violent behavior."  Record at 473.  Pain denied panic or anxiety attacks.  Id.  She was sad and depressed about her deceased husband, and she also described compulsively scratching until she injured her skin.  Id.  Nevertheless, Dr. Brown described Pain as "pleasant and cooperative" with appropriate eye contact, and adequate hygiene.  Id.

Pain's proverb interpretation was accurate, and she was able to identify the number of months in a year, the function of a thermometer, and the direction of the sunrise. Id. As for memory, Dr. Brown observed that Pain "could remember three of three items immediately and two of three after five minutes." Record at 474. She could repeat six digits forward and four digits backwards. Id. She could do simple math problems and could count backwards by sevens. Id. Her judgment was normal, and she could describe differences and similarities among objects. Id. Pain's speech was "fluent and clear" and she was able to "express her thoughts and feelings without hesitation or delay." Id. Her thought processes were coherent and goal-directed, with no evidence of delusions, illusions, hallucinations or paranoia. Id. Her affect was appropriate, and her mood was neutral. Id. According to Dr. Brown, Pain was fully oriented, had average "cognitive/intellectual functioning" and had a reasonable fund of knowledge. Id.

Pain told Dr. Brown that she could dress, bathe, and groom herself, and did the "cooking, cleaning, laundry and shopping." Record at 474. She managed her own money. Id. She had friends, and good family relationships. Id. Dr. Brown diagnosed Pain with depression, a generalized anxiety disorder, and borderline personality disorder. Id.

Because Pain saw no other mental health practitioners, there are no more mental status reports in the record. Dr. Gamao's writing is often illegible, but Pain has not pointed to anything relevant in his notes. The ALJ accurately noted that there was no evidence of bizarre behavior or an inability or unwillingness to cooperate with health care providers. Record at 19. Pain has not pointed to any such evidence.

The reviewing agency mental health experts, Lauren Cohen, Ph.D., and Stephen Kleinman, MD, found that the evidence did not substantiate the presence of a psychiatric disorder. Record at 70, 107. Drs. Cohen and Kleinman both found that Pain had no restrictions which were more than mild. Record at 70, 107.

Nevertheless, in determining at the third stage of the sequential evaluation that Pain's severe impairments did not meet a listing, the ALJ decided that her mental illness caused moderate limitations in understanding, remembering, or applying information; and in concentrating, persisting, or maintaining pace. Record at 19. The ALJ also found Pain to have mild limitations in interacting with others, and in adapting or managing herself. Id.

As above, the only part of the ALJ's RFC assessment which is pertinent to Pain's mental impairments is the specification that she would be off-task 5% of the workday. Record at 20. Pain argues that this is inadequate to address all of the limitations the ALJ found at stage three.

First, it is fairly obvious how the specification that Pain could be off task for 5% of her workday related to the moderate limitation in concentration, persistence, or pace found by the ALJ. Presumably, the off-task time represents periods in which Pain would have lost her focus on her work. Pain's argument that this does not accommodate her difficulty in "pace" requires no real discussion, since the three concepts are set forth in the regulations in the disjunctive, and Pain has not shown that her issues are with "pace", as distinguished from concentration and persistence. 20 CFR Pt. 404, Subpart P, App. 1 at §12.00E3.

The ALJ also stated that the 5% off-task accommodation would address Pain's limitation in understanding, remembering and applying information. Dr. Brown concluded that Pain had average cognitive functioning, and she was successful in almost all of his testing, but the ALJ was deferential to Pain and found that she had moderate limitations in this area. She relied upon

Pain's claim in her Function Report that she needed to refer to written instructions multiple times, and needed spoken instructions repeated to her "for understanding and clarity." Record at 354. Logically, the needed repetitions would take place during the 5% of time spent off-task.

It is true that the ALJ did not include in her RFC assessment any accommodation for the areas in which she found Pain to have only mild limitations – interacting with others, and adapting and managing herself. The Commissioner, however, argues that this does not compel remand. He points out that several courts have found that a mild limitation need not be accommodated in an RFC assessment. See Sanford v. Saul, Civ. A. No. 18-2886, 2020 WL 633743 at *20 (D.S.C. Feb. 11, 2020); Bailey v. Berryhill, Civ. A. No. 17-165, 2018 WL 3939337 at *4 (W.D. N.C. Aug. 16, 2018); Burrell v. Commissioner of Social Security, Case No. 14-14529, 2016 WL 1165994 at *10 (E.D. Mich. Feb. 29, 2016); Carrigan v. Astrue, Civ. A. No. 10-303, 2011 WL 4372651 at *7 (D.Vt. Aug. 26, 2011).

As the District Court for the Western District of North Carolina explained in Sanford, this is consistent with the fact that, under Social Security regulations, a "mild" mental limitation corresponds to a finding that an impairment is not severe, i.e., that it does not significantly limit a claimant's ability to do basic work activities. Bailey, supra, citing 20 CFR § 404.1520a; see also Sandford, supra, at * 20 (citing Bailey).

No Third Circuit court has reached this conclusion, although in one Pennsylvania case, remand was found unnecessary where a single mild mental limitation was not specifically accommodated in an otherwise well-supported RFC assessment. Hamm v. Berryhill, Civ. A. No. 17-958, 2018 WL 317935 at **10-11 (M.D. Pa. Jan. 8, 2018).

Here, Pain's prior work required considerable flexibility, and interaction with both employees and visitors to her workplace. Record at 45-46. Pain said: "That's what I loved about it. It was awesome." Record at 46. She stopped working because her job was eliminated, and not because she could not cope with the work. Record at 41. Therefore, although Pain relies upon the vocational expert's testimony that an individual who could not "react appropriately to criticism of supervisors or to routine changes in a work setting" (among other limitations) was unable to work, there is no evidence that Pain suffered from such limitations. Record at 62-3.

Finally, Pain argues that the ALJ's determination that she was only mildly limited in the ability to manage herself was unreviewable, because it "provided very little insight into" her limitations in this domain. Pain's Brief at 10. In fact, however, the ALJ pointed out that, in her Function Report, Pain attributed her difficulties in self-care to pain, and not to mental health issues. Record at 19, 350.

Thus, Pain has not demonstrated that she suffered from difficulties in interacting with others or with adapting and managing herself which, combined with her other limitations, caused significant work-related limitations. Consequently, remand is not necessary in this case.

V.   Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ should be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE